ORSUS GATE LLP
Denis Shmidt (Bar No. 267987)
Nabil Bisharat (Bar No. 270305)
Zachary Murray (Bar No. 344762)
16 N. Marengo Ave., Suite 505
Pasadena, CA 91101
Telephone: (213) 973-2052
Email: DShmidt@OrsusGate.com
Email: NBisharat@OrsusGate.com
Email: ZMurray@OrsusGate.com

*Attorneys for Defendant and Counterclaimant*
*Beach Cities Chabad*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOSEF SHLOMO GREENWALD, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BEACH CITIES CHABAD, a non-profit corporation,<br><br>Defendant.<br><br><hr>AND RELATED COUNTERCLAIM | Case No. 2:25-CV-05829-AB-SSC<br><br>**DEFENDANT AND COUNTERCLAIMANT BEACH CITIES CHABAD'S REPLY IN SUPPORT OF ITS PETITION TO CONFIRM ARBITRATION AWARD**<br><br>Complaint Filed: June 26, 2025<br>FACC Filed: August 4, 2025<br><br>Date:      August 14, 2026<br>Time:      10:00 a.m.<br>Judge:     Hon. Andre Birotte, Jr.<br><br>*Filed concurrently with the Second Declaration of Daniel Katz* |

## I.      **INTRODUCTION**

It is undisputed that Greenwald borrowed $6.8 million from Beach Cities.  It is also undisputed that payment is long overdue and Greenwald has yet to repay a single penny.  After attempting, and failing, to undermine the loan agreement in this Court and in the RCC[1], Greenwald now seeks to avoid paying by muddying the waters of Beach Cities' proposed judgment.

While Greenwald does not attack the Final Award itself, he does attack three of the six orders sought by Beach Cities via the Proposed Judgment.  Specifically, he claims that the judgment should not include (1) the counter-defendant entities that he owns and controls; (2) a general judgment granting Beach Cities' counterclaims; or (3) any post-judgment interest.

To avoid unnecessary guesswork as to the RCC's intentions, Beach Cities provided the RCC its Proposed Judgment alongside Greenwald's Opposition and the RCC confirmed that, with the exception of post-judgment interest provided for by federal law, the Proposed Judgment was in line with its Final Award.

Even absent this confirmation, Greenwald's objections are meritless.  The Greenwald Entities are named parties who have participated in all stages of the proceedings in both this Court and in the RCC, and the RCC's Final Award directly affects properties uniquely owned by those entities, meaning that the Final Award and judgment must apply to them to have any meaning.

Similarly, both the Initial Award and the Final Award clearly state that Beach Cities is entitled to a $6.8 million award and nowhere does the RCC limit Beach Cities' ability to enforce the award to foreclosing on certain of the defendant entities' properties.

Finally, while the Final Award is entirely silent as to post-judgment interest, established authority dictates that post-judgment interest is determined by the Court under federal law rather than the arbitrator, regardless of whether the

---

[1] Unless otherwise defined here, capitalized terms shall have the same meaning as in the Petition.

1

arbitrator weighs in on the interest or is entirely silent on the matter.

The Court should confirm the award, adopt the RCC's interpretation of its own award, and enter judgment consistent with the Proposed Judgment.

## II.   REPLY ARGUMENT

### A.   The Court Must Confirm the Arbitration Award

As stated in both Beach Cities' Petition and Greenwald's Opposition, the Court *must* confirm an arbitration award unless it falls into a very narrow set of exceptions.  [Petition (Dkt. 71) at 5:4-6:12; Opp. (Dkt. 72) at 7:1-11].  Nowhere in its Opposition does Greenwald claim that any exception applies or argue that the Final Award is somehow improper.  As such, the question for this Court is not whether to confirm the Final Award (it must), but what verbiage to use in its judgment.

### B.   The Court Should Adopt Beach Cities' Proposed Judgment

The Proposed Judgment proposes six separate orders to confirm the Arbitration Award. [*See* Proposed Judgment (Dkt. 71-3)]. Greenwald does not appear to oppose paragraphs 1, 3 or 6 of the Proposed Judgment but does attack the following three orders: (1) Beach Cities' inclusion of the various party-entities which Greenwald owns and controls[2]; (2) a judgment in Beach Cities' favor on its counterclaims, totaling $6.8 million[3]; and (3) the inclusion of post-judgment interest[4]. As discussed below, the RCC has already reviewed and endorsed the Proposed Judgment and, even absent its endorsement, none of Greenwald's arguments have merit. The Court should therefore adopt the Proposed Judgment in its entirety.

/ / /

/ / /

---

[2] This is found in Proposed Judgment Paragraph 2.

[3] This is found in Proposed Judgment Paragraph 4.

[4] This is found in Proposed Judgment Paragraph 5.

2

**1.    The RCC Has Confirmed That the Proposed Judgment Complies with Its Final Award**

"Judicial review of arbitration awards is limited and highly deferential" to the Arbitrator's decision. *Swenson v. Bushman Inv. Props., Ltd.,* 870 F. Supp. 2d 1049, 1057 (D. Idaho 2012).  When faced with any ambiguity in an arbitration award, the Court may (and should) rely on the arbitrator's interpretation of its own award. *See Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, Loc. 631 v. Silver State Disposal Serv., Inc.*, 109 F.3d 1409, 1411 (9th Cir. 1997) (affirming confirmation of arbitration award after district court relied on the arbitrator's clarification of its own award); *see also Loc. 2322, Int'l Bhd. of Elec. Workers v. Verizon New England, Inc.,* 464 F.3d 93, 97 (1st Cir. 2006) (relying on arbitrator's clarification after issuing final award); *La Vale Plaza, Inc. v. R. S. Noonan, Inc.,* 378 F.2d 569, 573 (3d Cir. 1967) (allowing arbitrator "to remove the cloud of doubt" as to its award); *Brown v. Witco Corp.*, 340 F.3d 209, 217 (5th Cir. 2003) (the arbitrator "clearly did have jurisdiction to clarify what he originally intended to award Brown in the light of the specific issues and ambiguities raised by both parties post-arbitration"); *Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, AFL-CIO, CLC, Loc. 182B v. Excelsior Foundry Co.,* 56 F.3d 844, 848 (7th Cir. 1995) (allowing arbitrator to clarify its award);  *Kennecott Utah Copper Corp. v. Becker,* 186 F.3d 1261, 1271-72 (10th Cir. 1999) (permitting arbitrator to explain an ambiguity in its award).

This is not the first time that Greenwald has attempted to muddy the waters to avoid his legal obligations to Beach Cities. The first time resulted in the Initial Award being amended by the Final Award.  Greenwald now uses the interplay between the Initial Award and the Final Award to again stymy the RCC's intentions and undermine the arbitration process.

To avoid such machinations, Beach Cities went straight to the source.  On July 27, 2026, Beach Cities emailed the RCC, attaching both its Proposed

Judgment and Greenwald's Opposition, and requested that the RCC confirm that Beach Cities' Proposed Judgment complies with the Final Award. [2nd Katz Decl. ¶ 11, Ex. C].  Unsurprisingly, Greenwald's counsel argued against the RCC providing clarity as to its own award.  [2nd Katz Decl. ¶ 12].  The RCC responded with the following: "The Beis Din[5] has no objections to points 1, 2, 3, 4 and 6[6] of the Proposed Final Judgment (pages 28 and 29), but notes that its Final Award did not award any interest (pre- or post judgment) which is set forth in point 5 of the Proposed Final Judgment." [2nd Katz Decl. ¶ 13, Ex. C].

In short, the RCC has confirmed that the Proposed Judgment is entirely in line with its Final Award, only noting (correctly) that its award does not address interest.[7]

### 2. The Judgment Should Include Both Greenwald and His Companies

Proposed Judgment paragraph 2 proposes the following language: "Judgment is hereby entered in favor of Beach Cities and against Greenwald and the Greenwald Parties."  [Proposed Judgment (Dkt. 71-3) ¶ 2]. It further defines the "Greenwald Parties" as "Greenwald and 144 Quigley Blvd, LLC, 144 Call Hollow LLC, Kan Tziva LLC, Miriam Greenwald, 174 Campbell LLC, 1471-1475 Chapel Street, LLC, 19 Truman Holdings, LLC, LS INV LLC, MYS Distributors LLC, Raisethon LLC." [*Id*.]. Greenwald argues that the Judgment should not include his companies (i.e., "Greenwald Entities"), but should only apply to him. [Opp. (Dkt. 72) at 6:5-11].

This position makes no sense given the record of the case and the contents of the Final Award.  The Greenwald Entities own the properties Greenwald used to

---

[5] The terms "RCC" and "Beis Din" are used interchangeably for the purpose of this Petition.

[6] The Proposed Judgment seeks six orders, numbers 1-6.  [Proposed Judgment (Dkt. 71-3)].

[7] As discussed below, the award of post-judgment interest is reserved for the Court, and not the Arbitrator, so the Beis Din's abstention on this issue is entirely in line with controlling authority.

4

secure the underlying loan.  [First Amended Counterclaim (Dkt. 35) pgs. 18-22 (¶¶ 9-18), Exs. A-E (Dkts. 35-1 – 35-5)].  The Greenwald Entities are parties to this lawsuit.  [*Id.*].  The Greenwald Entities signed onto the Joint Stipulation to arbitrate this dispute before the RCC [Joint Stip. (Dkt. 59)] and were subsequently ordered to arbitration [Order (Dkt. 60)].  The Greenwald Entities participated in the arbitration before the RCC and the RCC's Final Award expressly applies to the disposition of the Greenwald Entities' properties.  [Final Award (Dkt. 71-2, Ex. B) ¶¶ 2-4].  The Final Award therefore clearly applies not only to Greenwald himself but the Greenwald Entities as well.

While Beach Cities believes that no ambiguity on this point exists—especially after the RCC has already weighed in and supported the Proposed Judgment—if the Court believes that the award contains an ambiguity based on the RCC's failure to expressly name the Greenwald Entities in the Final Award, this Court may clarify what an award means when the clarification is grounded in the record.  *See* 9 U.S.C. § 11(c); *see also Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty. v. Celotex Corp.,* 708 F.2d 488, 491 (9th Cir. 1983) ("We do not see then how the district court's interpretation of the arbitration award had the effect of substantially modifying the award. Instead, and quite clearly, the interpretation had the effect of merely giving substance to the somewhat ambiguous default award that the Labor-Management Committee had made. Since the interpretation was closely based on the grievances filed, we cannot say that the district court committed error."); *see also Trs. of New York State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC,* 102 F.4th 572, 607 (2d Cir. 2024) ("a court may enforce a seemingly ambiguous award if the award's meaning is clearly resolved by the record"); *Ganey v. Raffone,* 91 F.3d 143 (6th Cir. 1996) ("it is well-settled that a district court may not interpret an ambiguous arbitration award unless the ambiguity can be resolved from the record"); *Nano Gas Techs., Inc. v. Roe,* 31 F.4th 1028, 1031 (7th Cir. 2022) ("we must enforce the award as

5

written and 'if possible, resolve apparent ambiguities by examining the arbitrator's opinion and the record'").

Here, the record clearly shows that the Greenwald Entities were signatories to the underlying agreements, part of the dispute, parties to the litigation, parties to the arbitration, and that the Final Award directly addresses and affects properties owned by the Greenwald Entities.  Excluding the Greenwald Entities would make paragraphs 2-4 of the Final Award impossible to effectuate since they revolve around properties owned by the Greenwald Entities, and not Greenwald in his personal capacity.  Since the judgment must effectuate the intent of the RCC as outlined through the Final Award, the Court should enter Judgment as against both Greenwald and the Greenwald Entities, which are collectively defined in the Proposed Judgment as the "Greenwald Parties".

### 3.    The Judgment Should  Award Beach Cities $6.8 Million and Grant Its Counterclaims

Proposed Judgment paragraph 4 proposes the following language: "Beach Cities' Counterclaims are therefore GRANTED, and Beach Cities is entitled to the $6.8 million in principal under the Promissory Note dated November 1, 2024" [Proposed Judgment (Dkt. 71-3) ¶ 4]. The Opposition argues that this is improper because the RCC somehow limited Beach Cities' path to recovery to the procedures outlined in paragraphs 2-4 of the Final Award [Opp. (Dkt. 72) at 9:11-19].  This is a clear misreading of the award.

The Initial Award confirmed that "The Beis Din upholds the right of Beach Cities Chabad to collect the outstanding 6.8 million dollars in principal lent to the Plaintiff. The liens are confirmed as securing the repayment of the foregoing obligation and BCC may foreclose such lien and exercise all remedies under the lien documents." [Initial Award (Dkt. 71-2, Ex. A)]. However, when Beach Cities attempted to comply with the Initial Award by foreclosing on the liens, Greenwald began threatening further retaliatory litigation. [2nd Katz Decl. ¶ 9].

6

This, in turn, led Beach Cities to reach back out to the RCC and clarify its Initial Award, which ultimately resulted in the Final Award.  [2nd Katz Decl. ¶ 10].[8]  The Final Award was expressly issued to clarify and implement the intent of the Initial Award and expressly stated that both the Initial Award and the Final Award are applicable, with the Final Award governing any dispute between the two.

> Since the issuance of the [Initial Award][9], there has been much communication between the parties and the Beis Din, with delays in implementing the [Initial Award].  We have decided…to restate our Psak in clear terms as set forth herein….  It is the intent of the Beis Din that this [Final Award] governs and any conflict between this [Final Award] and the [Initial Award] will be determined and governed by this [Final Award].

[Final Award (Dkt. 71-2, Ex. B) pg. 1].  Both the Initial Award and the Final Award clearly state that Beach Cities is entitled to $6.8 million.  [Initial Award (Dkt. 71-2, Ex. A) ("The Beis Din upholds the right of Beach Cities Chabad to collect the outstanding 6.8 million dollars in principal lent to the Plaintiff."; Final Award (Dkt. 71-2, Ex. B ¶ 1) ("The Beis Din awards the Chabad Organization the full $6,800,000.00 principal amount of the loan set forth in the Promissory Note….")]. Beach Cities' First, Third, Fifth, and Sixth Counterclaims sought the $6.8 million in principal as damages. [Counterclaims (Dkt. 35) ¶¶ 57-62, 71-76, 88-94].

Similarly, both the Initial Award and Final Award expressly allow Beach Cities to collect the $6.8 million debt by enforcing both the Guaranty and Pledge and Security Agreement.  [Initial Award (Dkt. 71-2, Ex. A) ("[Beach Cities] may

---

[8] While Greenwald's counsel (Aryeh Kaufman) attached a tiny highly redacted portion of this briefing to his declaration, the briefing before the RCC was extensive, with dozens of communications from both parties spanning several months.  [2nd Katz Decl. ¶ 10]. Beach Cities believes this briefing is irrelevant to the present question and inappropriate for the Court to review in confirming an arbitration award. However, Beach Cities can make all such communications available to the Court upon request.

[9] The Beis Din referred to the Initial Award as the "Original Psak" and the Final Award as the "AR Psak"

foreclose such lien and exercise all remedies under the lien documents."); Final Award (Dkt. 71-2, Ex. B ¶ 2) ("The Beis Din confirms that the Guaranty and the Pledge and Security Agreement entered into between Chabad Organization and Greenwald may be enforced against Greenwald in accordance with this [Final Award]."]. Seeking to enforce the Guaranty and the Pledge and Security Agreement was precisely the relief Beach Cities sought in its Second and Seventh Counterclaims. [Counterclaims (Dkt. 35) ¶¶ 63-70, 95-99].  The Final Award further granted Beach Cities the right to foreclose on the liens provided for by the Guaranty and the Pledge and Security Agreement. [Final Award (Dkt. 71-2, Ex. B ¶ 3) ("Such enforcement may be by foreclosure (judicial or non-judicial) of the Relevant Properties…")].

In short, Beach Cities' Counterclaims have been granted. The RCC awarded Beach Cities the $6.8 million from Greenwald and found its agreements with the Greenwald Parties to be enforceable. It is therefore unsurprising that the RCC clarified that it agreed with Beach Cities' Proposed Judgment. [2nd Katz Decl. ¶ 13, Ex. C].

To the extent Greenwald is opposing a $6.8 million judgment against him and the Greenwald Parties, it is critical to note that nowhere in either the Initial Award or the Final Award does the RCC identify these liens or foreclosures as Beach Cities' sole or exclusive remedies.  To the contrary, both documents consistently use permissive rather than mandatory language.  [*See* Initial Award (Dkt. 71-2, Ex. A) ("[Beach Cities] *may* foreclose such lien and exercise all remedies under the lien documents." (emphasis added)); (Final Award (Dkt. 71-2, Ex. B ¶ 1) (Beach Cities "*may* enforce the repayment of the Loan in accordance with this [Final Award]") (emphasis added), ¶ 2 ("the Guaranty and the Pledge and Security Agreement … *may* be enforced against Greenwald in accordance with this [Final Award]" (emphasis added), ¶ 3 ("Such enforcement *may* be by foreclosure (judicial or non-judicial) of the Relevant Properties…") (emphasis added)].

This Circuit has consistently interpreted the term "may" as permissive, rather than mandatory. *See Fernandez v. Brock*, 840 F.2d 622, 632 (9th Cir. 1988) ("'May' is a permissive word"); *Ent. USA Inc. v. Baldinsky*, 641 F. Supp. 3d 794, 799 (D. Ariz. 2022) ("'May' is a permissive word, and [the Court] will construe it to vest discretionary power").

By contrast, the RCC definitively awarded Beach Cities the full $6.8 million. [Final Award (Dkt. 71-2, Ex. B ¶ 1 ("The Beis Din awards the Chabad Organization the full $6,800,000.00 principal amount.") This is why the RCC itself confirmed that paragraph 4 of the Proposed Judgment is in line with its Final Award. [2nd Katz Decl. ¶ 13, Ex. C]. Beach Cities is therefore entitled to a judgment in the amount of $6.8 million.

**4.    The Judgment Should Include Post-Judgment Interest**

Proposed Judgment paragraph 5 proposes the following language: "Beach Cities is entitled to Post-Judgment Interest pursuant to 28 U.S.C. § 1961, accruing at the rate of 4.03%, or a daily rate of $801.10 (calculated by multiplying 4.03% by $6,800,000 and then dividing by 365 days), from the date of this Judgment." [Proposed Judgment (Dkt. 71-3) ¶ 5]. Greenwald does not dispute this calculation but instead argues that any post-judgment interest is improper because the Final Award is silent as to post-judgment interest. [Opp. (Dkt. 72) at 6:17-27]. In response to Beach Cities' request to confirm that the Proposed Judgment is in line with the Final Award, the RCC also confirmed that the "Final Award did not award any interest (pre- or post judgment)" [2nd Katz Decl. ¶ 13, Ex. C]. While it is undisputed that the Final Award is silent on the question of post-judgment interest, Greenwald's interpretation that this silence is akin to a denial of post-judgment interest misapplies well-settled law.

"A judgment confirming an arbitration award is treated similarly to any other federal judgment." *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1023 (9th Cir. 2004). "Post-judgment interest on a district court judgment is

9

mandatory per 28 U.S.C. § 1961." *Lagstein v. Certain Underwriters at Lloyd's of London*, 725 F.3d 1050, 1056 (9th Cir. 2013).  "Courts do not lack authority to award interest where an arbitration award is silent." *Id.* at 1055.  Therefore, "once an arbitration award is confirmed in federal court, the rate specified in § 1961 applies. This is the case even if the arbitration award purported to grant post-judgment interest" or if the arbitration award is silent as to post-judgment interest. *Fid. Fed. Bank, FSB,* 387 F.3d at 1024 (affirming post-judgment interest when the arbitration award only referred to pre-judgment interest); *see also Lagstein*, 725 F.3d at 1055-57 ("While the arbitrators' explicit award of interest on the contract damages should be respected, their failure to speak on interest otherwise does not constitute a denial of interest on other parts of the award.").

Here, both the Initial Award and the Final Award are entirely silent on the question of post-judgment interest. Under established law, once judgment is entered, Beach Cities is entitled to post-judgment interest per 28 U.S.C. § 1961 until the full judgment is satisfied.

## III.   CONCLUSION

Beach Cities respectfully requests that the Court grant its Petition, confirm the Final Award, and enter judgment consistent with its Proposed Judgment.

Dated: July 31, 2026

Respectfully Submitted,

ORSUS GATE LLP
Denis Shmidt
Nabil Bisharat
Zachary Murray

By: /s/ Zachary Murray
Zachary Murray
*Attorneys for Defendant and Counterclaimant Beach Cities Chabad*

## <u>CERTIFICATION OF SERVICE</u>

The undersigned hereby certifies that on July 31, 2026, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

By: /s/ Zachary Murray
Zachary Murray

## <u>CERTIFICATION OF COMPLIANCE WITH L.R. 11-6.2</u>

The undersigned, counsel of record for Defendant Beach Cities Chabad, hereby certifies that this reply memorandum contains 2,995 words.

By: /s/ Zachary Murray
Zachary Murray